UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| TRANSPORTATION TRADES DEPARTMENT, AFL-CIO, et al.,<br><br>*Plaintiffs*,<br><br>v.<br><br>NATIONAL MEDIATION BOARD,<br><br>*Defendant*. | Civil Action No. 1:19-cv-03107 (CJN) |

**MEMORANDUM OPINION**

Plaintiff unions challenge the National Mediation Board's Final Rule regarding decertification of collective bargaining representatives on the grounds that the Rule violates the Railway Labor Act, 45 U.S.C. § 151 *et seq.*, and is arbitrary and capricious under the Administrative Procedure Act, 5 U.S.C. § 706(2)(A). *See generally* Compl., ECF No. 1. Pending before the Court are the Board's Motion to Dismiss or for Summary Judgment, ECF No. 13 ("Def.'s Mot."), and the unions' Cross-Motion for Summary Judgment, ECF No. 17 ("Pls.' Mot."). Because the Final Rule is permissible under the Act and is not arbitrary and capricious, the Court denies the unions' Motion for Summary Judgment and grants summary judgment to the Board.

**I.    Background**

The Railway Labor Act governs labor relations in the railroad and airline industries. Among other things, the Act seeks to protect workers' right to "organize and bargain collectively through representatives of their own choosing." 45 U.S.C. 152, Fourth; *see generally* 45 U.S.C. § 151a (describing the Act's "[g]eneral purposes").

1

The Act has little to say about how employees should choose their representatives, but does provide that "[t]he majority of any craft or class of employees shall have the right to determine who shall be the representative of the craft or class." 45 U.S.C. § 152, Fourth. Section 2, Ninth establishes the National Mediation Board, which is authorized to hold elections to resolve representation disputes:

> If any dispute shall arise among a carrier's employees as to who are the representatives of such employees designated and authorized in accordance with the requirements of this chapter, it shall be the duty of the Mediation Board, upon request of either party to the dispute, to investigate such dispute and to certify [the proper representatives] . . . . In such an investigation, the Mediation Board shall be authorized to take a secret ballot of the employees involved, or to utilize any other appropriate method of ascertaining the names of their duly designated and authorized representatives in such manner as shall insure the choice of representatives by the employees without interference, influence, or coercion exercised by the carrier . . . . In the conduct of any election for the purposes herein indicated the Board shall designate who may participate in the election and establish the rules to govern the election.

45 U.S.C. § 152, Ninth. Representation elections are further governed by Section 2, Twelfth, which provides:

> The Mediation Board, upon receipt of an application requesting that an organization or individual be certified as the representative of any craft or class of employees, shall not direct an election or use any other method to determine who shall be the representative of such craft or class unless the Mediation Board determines that the application is supported by a showing of interest from not less than 50 percent of the employees in the craft or class.

45 U.S.C. § 152, Twelfth. The Act does not contain express language granting workers the right to seek *decertification* of a union, but the Supreme Court held long ago that workers have the statutory "right to determine who shall be the representative of the group or, indeed, whether they shall have any representation at all." *Bhd. of Ry. & S. S. Clerks, Freight Handlers, Express & Station Emps. v. Ass'n for the Benefit of Non-Contract Emps.*, 380 U.S. 650, 670 (1965) ("*Bhd. of Ry. & S. S. Clerks*").

2

Prior to the Board's adoption of the Final Rule in 2019, decertification of a union could be sought through what came to be known as the "straw-man" procedure. 84 Fed. Reg. 35,978. Because representation elections were triggered only if the Board received an application for an individual seeking to be certified as a representative, employees seeking *decertification* first had to find an individual—a "straw man"—who would apply to be *certified* as the collective bargaining representative, even though the ultimate goal was decertification. *Id.* At the election, the ballot included two options that would effectively result in decertification: a "no union" option or election of the straw man (who would step down if elected). *Id.* But the "no union" and straw man votes were counted separately, so employees could achieve decertification only if either the "no union" option or the straw man option won a majority of votes cast during the election. *Id.*

In 2019, the Board sought to simplify this process by eliminating this procedure. 84 Fed. Reg. 35,979. Following notice and comment, the Board issued a Final Rule permitting the Board to accept applications that seek decertification directly. 84 Fed. Reg. 35,987. The Final Rule also extends the period of repose—during which no representation elections can be held absent "unusual or extraordinary circumstances," 29 C.F.R. § 1206.4—following a decertification from one year to two years, the same period of repose following certification, Pls.' Mot. at 22–26.

Plaintiffs filed this action on October 16, 2019, claiming that the new decertification procedure violates the Railway Labor Act and that it was arbitrary and capricious to extend the post-decertification period of repose. *See generally* Compl. Pending before the Court are the Board's Motion to Dismiss or for Summary Judgment, *see generally* Def.'s Mot., and the unions' Motion for Summary Judgment, *see generally* Pls.' Mot. The Board argues that the unions do not have standing to challenge the Final Rule and that, even if they do, the Final Rule is lawful.

## II.     Analysis

### A. Standing

Courts "have an independent obligation to determine whether subject-matter jurisdiction exists." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 514 (2006). If "a federal court concludes that it lacks subject-matter jurisdiction, the complaint must be dismissed in its entirety." *Id.* at 502. On a motion to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1), "the plaintiff bears the burden of establishing jurisdiction by a preponderance of the evidence." *Tex. Children's Hosp. v. Azar*, 315 F. Supp. 3d 322, 329 (D.D.C. 2018) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992)). The Court "is not limited to the allegations of the complaint," *Hohri v. United States*, 782 F.2d 227, 241 (D.C. Cir. 1986), *vacated on other grounds*, 482 U.S. 64 (1987); instead, the Court "may consider such materials outside the pleadings as it deems appropriate," *Scolaro v. Dist. of Columbia Bd. of Elections & Ethics*, 104 F. Supp. 2d 18, 22 (D.D.C. 2000); *see also Jerome Stevens Pharms., Inc. v. FDA*, 402 F.3d 1249, 1253 (D.C. Cir. 2005).

Standing requires the "plaintiff [to] have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1547 (2016) (citing *Lujan*, 504 U.S. at 560–61). The Board argues that the unions satisfy none of these requirements because (1) no union has been (or imminently will be) decertified as a result of the Final Rule; (2) such decertification would not confer standing because the unions could also be decertified under the prior straw-man procedure; (3) any injury would be the result of third-party choices, not attributable to the Board; and (4) no injury is traceable to the Final Rule or redressable by a decision favorable to the unions. Def.'s Mot. at 8–12.

The unions respond that they have standing to challenge the Final Rule under the so-called competitor standing doctrine. Pls.' Mot. at 10–15.[1]  That doctrine recognizes that "when regulations illegally structure a competitive environment—whether an agency proceeding, a market, or a reelection race—parties defending concrete interests in that environment suffer legal harm under Article III." *Save Jobs USA v. U.S. Dep't of Homeland Sec.*, 942 F.3d 504, 509 (D.C. Cir. 2019) (quoting *Am. Inst. of Certified Pub. Accountants v. IRS*, 804 F.3d 1193, 1197 (D.C. Cir. 2015)).  The Court of Appeals has repeatedly held that "an individual who competes in a labor market has standing to challenge allegedly unlawful government action that is likely to lead to an increased supply of labor—and thus competition—in that market."  *Id.* (collecting cases). Although the classic competitor standing cases involve increased competition for jobs in a labor market, the Court of Appeals has also held that plaintiffs suffer an injury in fact when a regulation presents political candidates with additional competitors and additional tactics that "fundamentally alter the environment in which rival parties defend their concrete interests (e.g., their interest in . . . winning reelection)."  *Shays v. Fed. Election Comm'n*, 414 F.3d 76, 86 (D.C. Cir. 2005).  And when a regulation permits increased competition, the competitive injury is "directly traceable" to the agency as a matter of law (and redressable by a favorable court order).  *See Wash. All. of Tech. Workers v. United States Dep't of Homeland Sec.*, 892 F.3d 332, 341 (D.C. Cir. 2018).

Although no court has apparently applied the competitor standing doctrine in the context of union elections, it does seem apt here.  After all, the Final Rule fundamentally alters the environment in which rival parties—employees who wish to be represented, employees who do not wish to be represented, the union, and perhaps even the employer—defend their concrete

---

[1] In addition to their competitor-standing argument, the unions argue that they have sufficiently demonstrated injury in fact because at least one Plaintiff has already faced potential decertification in an election conducted pursuant to the new direct decertification procedure.  *See* Pls.' Reply in Support of Mot. for Summ. J. at 4, ECF No. 21.

5

interests. The Rule not only removes a barrier to entry for employees seeking decertification, but it also concentrates support for decertification by eliminating the straw man option at the ballot box. The Board itself is of the view that the prior rules made it confusing—and therefore more difficult—to mount a decertification challenge to union representation. 84 Fed. Reg. 35,984. Now, the Board has changed the procedures to make it less confusing—and therefore easier—for a union to be decertified. *Id.* (Surely if the Board had changed the procedures to make decertification harder to achieve, employees who did not wish to be represented would have standing to challenge the new regime.) In much the same way that political candidates may challenge rules that "fundamentally alter the environment in which rival parties defend their concrete interests (e.g., their interest in . . . winning reelection)," *Shays*, 414 F.3d at 86, the unions have standing to challenge the Final Rule.

### B.  Direct Decertification

The unions' first challenge to the Final Rule is to the new direct decertification procedure. They contend that Section 2, Twelfth, precludes the Board from conducting elections after receiving an application to *decertify* representation, Pls.' Mot. at 2, because the Act permits the Board to conduct elections only upon receipt of "an application requesting that an organization or individual be *certified as the representative*." 45 U.S.C. § 152, Twelfth (emphasis added).

"When an agency 'interpret[s] a statute it is charged with administering in a manner (and through a process) evincing an exercise of its lawmaking authority,' that interpretation is entitled to [*Chevron* deference.]" *Am. Hosp. Ass'n v. Azar*, 967 F.3d 818, 828 (D.C. Cir. 2020) (quoting *SoundExchange, Inc. v. Copyright Royalty Bd.*, 904 F.3d 41, 54–55 (D.C. Cir. 2018)). "If the intent of Congress is clear, that is the end of the matter; for the court, as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Chevron U.S.A., Inc. v. Nat'l Res. Def. Council*, 467 U.S. 837, 842–43 (1984). But when a statute is "silent or ambiguous with

6

respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Chevron*, 467 U.S. at 843.

Under *Chevron*, we first ask whether "Congress has directly spoken to the precise question at issue." 467 U.S. at 842. Here, the "precise question at issue" is whether the Board may hold an election upon receiving an application directly seeking decertification.

The unions argue that the plain language of Section 2, Twelfth prohibits the Board from acting on such applications. Pls.' Mot. at 2–3, 17–18. The unions rely heavily on *RLEA*, in which the Court of Appeals considered a different section of the Act—Section 2, Ninth—and held that the Board had authority to investigate representation disputes only when the condition in the section granting the authority was satisfied, that is, "only upon request of the employees involved in the dispute," *Ry. Lab. Execs.' Ass'n v. Nat'l Mediation Bd.*, 29 F.3d 655, 664 (D.C. Cir. 1994), *amended*, 38 F.3d 1224 ("RLEA"). The unions contend that the "upon" language in the section relevant to this dispute—Section 2, Twelfth—similarly limits the Board to holding elections only when it has received an "application requesting that an organization or individual be certified as the representative of any craft or class of employees." Pls.' Mot. at 2–3; Pls.' Reply in Support of Mot. for Summ. J. at 9, ECF No. 21.

But there are important differences between Section 2, Twelfth and Section 2, Ninth that the unions' argument ignores. First, Section 2, Twelfth does not grant the Board its authority to hold elections; that authority is granted by Section 2, Ninth. And as the Court of Appeals has already held, "the Board enjoys exceptional latitude when acting within its proper sphere of Section 2, Ninth power." *RLEA*, 29 F.3d at 662. Section 2, Twelfth provides a carveout within that grant of authority: the Board cannot hold an election when the application for that election is not supported by at least half of the employees.

7

Moreover, Section 2, Ninth contains a positive command ("it *shall* be the duty of the Mediation Board . . . to investigate such dispute and to certify [the proper representatives]," 45 U.S.C. § 152, Ninth (emphasis added)), while Section 2, Twelfth contains a negative conditional command ("[the Board] *shall not* direct an election . . . *unless* [the application is supported by at least 50 percent of employees]," 45 U.S.C. § 152, Twelfth (emphasis added)).  Section 2, Twelfth's plain language means simply that when the Board receives an application for certification, it cannot hold an election unless the application is supported by at least half of the employees.

The unions argue that the lack of any mention of decertification in Section 2, Twelfth, indicates that Congress did not authorize the Board to act on applications seeking decertification. Pls.' Mot. at 3.  They note that the Railway Labor Act does not contain a provision for decertification (although other labor statutes have been amended to provide decertification procedures), *id.* at 5 n.4, and that Congress used the term "decertify" in another part of the Act, but not in Section 2, Twelfth, *id.* at 19–20, contending that if Congress had intended to authorize the Board to hold elections after receiving a decertification application, it would have mentioned decertification in Section 2, Twelfth, *id.*  But this argument proves too much, since the Supreme Court held long ago that workers covered by the Act have "the right to determine . . . whether they shall have any representation at all," *Bhd. of Ry. & S. S. Clerks*, 380 U.S. at 670, even though there was no mention of decertification in the Act at the time.  The unions do not argue that that decision is incorrect, or that employees do not have the right to seek decertification.

At the very least, the Act does not unambiguously preclude the direct decertification method adopted in the Final Rule, and the Court therefore defers to the Board's reasonable interpretation of the statute.  *See Am. Hosp. Ass'n v. Azar*, 967 F.3d at 828.  The Board established decertification procedures through notice-and-comment rulemaking and explained its belief that

"Section 2, Twelfth does not require employees or their representative to pretend to seek certification in order to vindicate their statutorily protected right of complete independence in the choice to be represented or be unrepresented." 84 Fed. Reg. 35,980. That interpretation is the better reading of the Act; at a minimum, it is a reasonable one. *See Chevron*, 467 U.S. at 842. The Final Rule's direct decertification procedure is not prohibited by the Railway Labor Act.

### C. Extended Period of Repose

The unions next challenge the Final Rule's extension of the period of repose following decertification. Under the old rules, a vote to decertify representation was followed by a one-year bar to challenges to that vote, while a vote to certify representation was followed by a two-year bar. 84 Fed. Reg. 35,985. The Final Rule extends the period of repose following decertification to two years, matching the period of repose following certifications. 84 Fed. Reg. 35,978–79. The unions assert that the extension is arbitrary and capricious because the Board has no rational and reasonable explanation for the two-year bar and the extended period of repose undermines the Act's purpose of "forbid[ding] any limitation upon freedom of association among employees or any denial, as a condition of employment or otherwise, of the right of employees to join a labor organization." Pls.' Mot. at 22–26 (quoting 45 U.S.C. § 151a).[2]

The APA's arbitrary and capricious standard requires that agency rules be reasonable and reasonably explained. *Carlson v. Postal Regulatory Comm'n*, 938 F.3d 337, 343–44 (D.C. Cir. 2019). The agency must "articulate a satisfactory explanation" for its decision, *Encino Motorcars,*

---

[2] In their Complaint, the unions allege that "[t]he two-year bar runs directly contrary" to the Act's mandate "to protect employees' freedom to choose a representative." Compl. ¶ 51. But the unions make no argument in their briefs that a one-year period of repose following decertification violates the Act, and they provide no explanation for why a two-year period of repose (to match the period of repose that follows certification) is impermissible under the Act when a one-year period of repose is not. Considering that the Board has regularly modified the period of repose over the past decades, *see* Def.'s Mot. at 17 (citing 84 Fed. Reg. 35,985), and in light of the fact that the Act also protects employees' choice to forego union representation, *Bhd. of Ry. & S. S. Clerks*, 380 U.S. at 670, the Court concludes (assuming the unions have preserved an argument to the contrary) that the Act does not preclude a two-year period of repose following decertification.

9

*LLC v. Navarro*, 136 S. Ct. 2117, 2125 (2016) (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)), and provide "a rational connection between the facts found and the choice made," *id.*  An agency violates the arbitrary and capricious standard if it fails to respond to "significant points" and consider "all relevant factors" raised in public comments.  *Carlson*, 938 F.3d at 344 (quoting *Home Box Office, Inc. v. FCC*, 567 F.2d 9, 35–36 (D.C. Cir. 1977)).  An agency's response to those comments must enable the Court "to see what major issues of policy were ventilated . . . and why the agency reacted to them as it did," but an agency need not "discuss every item of fact or opinion included in the submissions made to it." *Carlson*, 938 F.3d at 344 (quoting *Del. Dep't of Nat. Res. & Envtl. Control v. EPA*, 785 F.3d 1, 17 (D.C. Cir. 2015)).

The unions argue that there is no rational and reasonable explanation for the Final Rule's extension of the period of repose following decertification.  Pls.' Mot. at 23–24.  They contend that the two-year period of repose following certification exists to "give a newly certified representative adequate time to negotiate a new collective bargaining agreement free from the distraction and uncertainty of a challenge to the new representative's certification" and was "informed by the Board's experience in its mediation capacity, recognizing that collective bargaining under the [Act] is often a lengthy process." *Id.* at 24.  The unions argue that those concerns (and the Board's expertise) are not implicated by decertification.  *Id.*  They further argue that, because the Board has no experience working with employees after decertification, it has no evidence to support its determination that an extension is warranted.  *Id.* at 24–25.  According to the unions, none of the "complex . . . legal obligations . . . regarding both negotiations [and their enforcement]" following certification exist after decertification, so a two-year period of repose following decertification is unnecessary.  *Id.* at 25.

10

But the unions give the Board's explanation short shrift: The Final Rule states that the extended period of repose "reflects the Board's belief that both certification and decertification are significant undertakings by employees with a substantial impact on the workplace and employees' relationship with their employer" and gives employees who supported decertification an equal opportunity to "judge the advantages and disadvantages of their decision without the turmoil of an immediate organizing campaign." 84 Fed. Reg. at 35,986. The Board relied upon a comment (from an employee who successfully led a decertification effort using the old straw man procedure) that indicated that the one-year period of repose did not give employees enough time to evaluate the "benefits of a direct relationship" with the employer. *Id.*[3] And the Final Rule responded to opponents' comments questioning the necessity of a two-year period following decertification, explaining that the change "recognizes that the transition from represented to unrepresented has a significant impact on the employees and their workplace" and gives "employees who have rejected representation an additional year to experience their workplace and their direct relationship with their employer before another representation dispute can be raised in their work group." 84 Fed. Reg. at 35,985–87.

As for the unions' argument that the extended period of repose is arbitrary and capricious because it undermines the purpose of the Act, it is unclear how a two-year period of repose following certification advances the statute's purposes but a similar period following decertification does not. *See Bhd. of Ry. & S. S. Clerks*, 380 U.S. at 670 (finding that the Act grants workers "the right to determine who shall be the representative of the group or, indeed,

---

[3] The unions also imply that the Board's reliance on a single comment is inappropriate when outnumbered by comments opposing the Final Rule. *See* Pls.' Mot. at 25. But the Final Rule relied on multiple comments to reach its decision, *see* 84 Fed. Reg. at 35,986–87, and in any event, agency rulemaking is not a "democratic process by which the majority of commenters prevail by sheer weight of numbers," *Nat. Res. Def. Council, Inc. v. EPA*, 822 F.2d 104, 122 15 n.17 (D.C. Cir. 1987).

11

whether they shall have any representation at all"). In any event, the Court's arbitrary and capricious review asks whether agency action is reasonable, reasonably explained, and has adequately considered and responded to public comments. *See Carlson*, 938 F.3d at 343–44. It does not replace an agency's reasoned decision-making with the Court's (or the unions') own judgment. *Citizens to Pres. Overton Park, Inc. v. Volpe*, 401 U.S. 402, 416 (1971).

Here, the Board explained the reasons for its decision to extend the period of repose following decertification. *See Encino Motorcars, LLC*, 136 S. Ct. at 2125 (quoting *Motor Vehicle Mfrs. Ass'n of U.S., Inc.*, 463 U.S. at 43). The administrative record demonstrates that the Final Rule adequately responded to opponents' public comments. Although the unions may disagree with the Board's ultimate determination, the Court will not replace the Board's judgment with its own. The Court therefore concludes that the Final Rule's extension of the period of repose is not arbitrary and capricious.

### III.   Conclusion

The unions have failed to demonstrate that the Railway Labor Act forecloses the Rule's new decertification procedures or that the Board acted arbitrarily and capriciously when it adopted the two-year period of repose following decertification. The Court therefore denies the unions' Motion for Summary Judgment and grants summary judgment to the Board in full. An Order will be entered contemporaneously with this Memorandum Opinion.

DATE:  March 31, 2021

*[signature]*
CARL J. NICHOLS
United States District Judge